## CHANGES OF JUDGES DURING TRIAL.

[Circuit Court of Ashtabula County.]

THOMAS MASON V. STATE OF OHIO.

Decided, September Term, 1904.

*Trial—Change of Judge During—In a Trial for Felony Constitutes Reversible Error, When.*

Where upon a trial for murder in the second degree, after the evidence is all introduced, the trial judge becomes incapacitated to further continue in the case, and the prosecution is adjourned for eighteen days, part of the time from day to day by the sheriff, and at other times by another judge of the same subdivision; during which adjournment the jury is permitted to separate, going to different parts of the county; at the end of the eighteen days another judge of the same district hears the arguments, prepares the charge and delivers it to the jury; passes upon the motion for a new trial, and sentences the prisoner; and it does not affirmatively appear by the record that the new judge read any portion of the evidence, neither that the jury had been in any manner tampered with.

*Held:* That there was irregularity in the proceedings of the court and jury, and that the judgment should be reversed, and a new trial granted.

COOK, J.; LAUBIE, J., and BURROWS, J., concur.

Heard on error to the common pleas.

Thomas Mason, plaintiff in error, was indicted for the crime of murder in the second degree, was tried, and convicted of manslaughter.

Two principal grounds of error are relied upon. First, That the verdict was against the evidence; and, second, Irregularity in the proceedings of the court and jury.

As to the first ground it is sufficient to say that it is not well taken; but the second presents questions of a serious nature.

It appears from the record that Mason was placed on trial February 3d, 1904, and upon the third, fourth and fifth of February the jury was impanneled, case stated, and all the evidence on both sides introduced. At the adjournment of the court on the fifth, the jury—not having been ordered kept together—was

duly cautioned not to converse with any one or read anything about the case during their separation. On the morning of the sixth the trial judge in coming to court slipped upon the pavement, was seriously injured, and wholly incapacitated from taking any further part in the trial. From the sixth to the eighth inclusive the jury assembled each morning, when the case was adjourned to the following morning by the sheriff, the jury separating and mingling with the people of the village. On the morning of the ninth, the jury being present, another judge of the subdivision adjourned the court until the sixteenth, the jury going to their homes; upon which day, the jury being present, the court was adjourned by the same judge until the twentieth, and the jury again went to their homes throughout the county. On the twentieth the jury again was present, the second judge not being present on account of sickness, the court was again adjourned by the sheriff from day to day until the morning of the twenty-third, the jury dispersing each day, and going around through the village. On the morning of the twenty-third a judge from another subdivision of the district having been procured, was present and ordered the trial to proceed, over the objection of counsel for the accused, on the ground that the trial, under the circumstances, could not further proceed, as it would be entirely irregular for another judge to take up the trial at that stage; and that the jury having been so permitted to separate and mingle with the people was presumably not a fair and impartial jury. The objection of the counsel for the accused was overruled and exception taken. The argument of counsel was made, the jury charged, a motion for a new trial overruled, and sentence passed by the judge sitting in the place of the original judge.

Was this irregularity in the proceedings of the court to the prejudice of the accused? Although it is claimed upon argument that the evidence was typewritten and delivered to the judge who presided at the conclusion of the trial, this does not affirmatively appear, and from all that is known from the record the judge who was substituted had no knowledge of the evidence whatever.

It seems to us that this was an irregularity in the proceed-
ings of the court for which the judgment below must be re-
versed.

How could the trial judge who came into the case after the
evidence was submitted preside during the argument? The
argument is an important part of the trial. Arguments of
counsel to the jury should be based upon the evidence, and be
restricted to what was proven. Counsel should not be permitted
to distort and misstate the evidence, and yet the presiding judge
from the record had no knowledge of what the evidence was
whatever. But if we were to assume that the trial judge had
read the evidence the result would be the same. The appear-
ance and demeanor of the witnesses upon the stand are very
important factors in weighing evidence and gives counsel not
only a great field for argument but in many cases for misrepre-
sentation and improper denunciation. Did counsel fairly and
properly represent the appearance and demeanor of the wit-
nesses upon the stand in their arguments?

He also charged the jury. The charge of the court should
be directed to the facts of the case on trial. Abstract proposi-
tions of law are of little value to the jury and in many cases
misleading. How could the presiding judge direct his charge
to the facts when he heard none of the evidence. His charge
must necessarily be determined by the facts as he learned them
from counsel in their argument, which would be unreliable.
He further heard and passed upon the motion for a new trial,
one ground of which, and no doubt, from the hearing before us
upon error, the principal one, being that the verdict was not
sustained by the evidence. How could he pass upon the weight
of the evidence; some of the witnesses were detectives, others
officers interested in the conviction of the accused? A trial
judge from experience derives much benefit from seeing the
witnesses. He can pretty accurately determine whether the
witness is truthful or not from the manner in which he gives
his testimony, which would be all important upon the hearing
of a motion for a new trial. He sentenced the prisoner and
the sentence was an exceedingly severe one for the grade of the

.offense well up to the maxium. Did the evidence justify it?
.Possibly so, but how could the trial judge so determine.

The duties of the judge who took the place of the previous
one required judgment in all these matters, and it seems to us
that where judgment is required in the performance of the
duties of the trial judge in reference to the facts, one judge
can not be substituted for another during the trial, although
under the law the judge so acting under such change may have
the same jurisdiction and power as the disabled judge.

In the case of *Durban* v. *People*, Lawyer's Reports Annotated,
Book 55, page 241 (192 Ill., 493), Magruder, J., of the Supreme
Court, says:

"It is well settled that the argument of a cause is as much a
part of the trial as the hearing of the evidence (*Meredeth* v.
*People*, 84 Ill., 479).

"It is also a general rule established by the weight of au-
thority that in prosecutions for felonies the continual presence
of the judge during the entire course of the trial is essential;
and it is expressly held in many decisions that in the trial of
capital cases the judge should not retire from the bench even for
a brief absence without ordering a suspension of business until
his return (21 Ency. Pl. & Pr., pp. 978, 979, and cases referred
to in notes).

"It is claimed here, however, on the part of the state, that
during the trial of this case the bench was at no time vacant
because as soon as one circuit judge left the bench another
circuit judge having equal power and belonging to the same
circuit took his place. The court, it is said, was the same during
the whole of the trial, although two different persons presided
during the trial at different times. In justification of the pro-
ceedings here under consideration Section 62 of Chapter 37 of
our statutes entitled 'courts' is referred to; that Section pro-
vides that judges of several circuit courts of this state may inter-
change with each other and may hold court, or any branch of
the court for each other, and perform each other's duties where
they find it necessary or convenient. The vacation and substi-
tution which took place in this case find no justification in the
section thus referred to. A prisoner on trial for his life is en-
titled to the judgment of the judge who has heard the evidence
in the case and conducted the trial thereof. The instructions
given by a judge must be based upon the facts and necessarily
involve an application of the law to the particular facts of the

case.   Here the instructions given for the state were given by a judge who had heard none of the evidence; two instructions asked by the defendant were refused by a judge who heard none of the evidence.   It is true that the absence of one judge from the bench before the close of the trial was followed by the presence of another judge of equal power and jurisdiction. It is also true that circuit judges may hold court for each other, and perform each other's duties where they find it necessary or convenient, but this does not involve the right or power of one judge to finish for another the performance of a duty already entered upon by the latter, when that duty involves the exercise of judgment, and the application of legal knowledge and judicial deliberation to facts known to the latter and not known to the former.''

In this case many authorities are reviewed .and the opinion is an able one.   The court in the syllabus held:

''A mistrial will result from a change of judge without defendant's consent during trial of a criminal case when the argument to the jury is in progress, the new judge being required to read the defendant's instructions to the jury which have been approved by his predecessor, and to pass upon those presented by the state, although the judge belongs to the same circuit and the statutes permit such judges to interchange with each other, and to perform each other's duties.''

We do not hold that there are not certain preliminary duties which a judge may perform and the case afterward be continued and completed by a different judge, but that is not the case under consideration.

Another question that is made is that the jury being separated for eighteen days during the time that the case was not being tried, and scattered in different parts of the county, that it was error to proceed with the trial to that jury.   Ordinarily it must appear affirmatively from the record that members of the jury have been approached, have heard improper remarks, or read something about the case in order to be grounds for a new trial. That prejudice will not be presumed unless it appears.   Under the facts disclosed in this case we think improper conduct upon the part of the jury should be presumed and that prejudice resulted.   It is hardly possible that a jury could be at liberty for

eighteen days in all parts of the county, without being cautioned, and under no surveillance, in a case exciting so much public interest as this, without at least some of the jurors being improperly influenced. The charge in this case was murder in the second degree, involving liberty for life. Suppose the trial judge, in order to attend to some other business, had adjourned the case for eighteen days and permitted the jury to separate and go to their homes, would it not be held that such a jury was incapacitated from further duty in the case?

It seems to us that Section 7313 was enacted expressly to provide for a contingency like the one that arose in this case. That section provides:

"The court may discharge a jury without prejudice to the prosecution for the sickness of a juror, the corruption of a juror, or other accident or calamity, or because there is no probability of the jurors agreeing, and the reason for the discharge shall be entered on the journal."

Here was an accident incapacitating the trial judge from proceeding in the case, and the jury should have been discharged.

For these reasons the judgment of the common pleas court will be reversed and the case remanded for a new trial.

*H. J. Redmond, A. C. White* and *Perry & Roberts,* for plaintiff in error.

*C. L. Taylor,* Prosecuting Attorney, for defendant in error.